UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOREEN VAN BUREN, TONYA
WILLIAMS, SHAWNA PAYNE
MAXWELL, STACEY M. BURCH,　　　　　　　　　Case Number 17-11336
DIMITRIA JACKSON, WANDA L.　　　　　　　　　Honorable David M. Lawson
WILLIAMS, and SHARON JOHNSON,

      Plaintiffs,

v.

HEALTH ALLIANCE PLAN OF
MICHIGAN,

      Defendant.
_____/

## ORDER GRANTING JOINT MOTION TO APPROVE SETTLEMENT AND DISMISSING CASE WITH PREJUDICE

This matter is before the Court on a joint motion by the parties to approve the terms of their settlement agreement. The plaintiffs sued under the Fair Labor Standards Act (FLSA), alleging that the defendant failed to pay them the required overtime premium wage for hours worked in excess of 40 hours per week. An employee's right to overtime premium wages under the FLSA is mandatory and is not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). An exception to that general rule exists when a *bona fide* dispute arises between the employee and employer, and that dispute is settled under court supervision. *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350 (11th Cir. 1982)). The Court's obligation in reviewing settlements of FLSA claims is to "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Group LLC*, No. 09-1608, 2010 WL 2490989, at *5

(N.D. Ohio June 15, 2010) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2000)).

The Court held a hearing on this motion January 24, 2019. During that hearing the parties put the terms of their proposed settlement on the record, which calls for, among other things, payment by the defendant of gross settlement proceeds in the amount of $150,000. Deductions of $50,000 for attorney's fees and approximately $7,500 in litigation costs will be made, leaving a net settlement fund for distribution to the plaintiffs of a little more than $92,500. The parties represented that a good faith dispute exists between them over the exact number of hours of compensation due to the plaintiffs, because the defendant did not maintain any detailed time records for the plaintiffs for the period in question, and only some of the plaintiffs kept records of their time, none of which comprehensively accounted for the entire period in question. As noted below, there also was a good faith dispute on whether any of the defendant's conduct was willful. The settlement agreement calls for a *pro rata* distribution of the settlement fund based on the number of work weeks for which each plaintiff was required to work without receiving any overtime pay during the relevant time period. The plaintiffs assert that this is an equitable distribution of the proceeds because all of them worked in the same job classification and were paid the same salary during the period, which on an hourly basis equated to approximately $25 per hour.

At the hearing, the Court observed that neither the motion nor the settlement agreement included any estimate of the number of unpaid overtime hours that the plaintiffs believe they worked during the relevant time period. The lack of that context made it difficult for the Court to assess whether the proposed settlement payments would make the plaintiffs whole on their allegedly unpaid overtime wages. The Court directed counsel for the plaintiffs to submit a

supplement setting forth the plaintiffs' estimates of their total unpaid wage claims, and counsel filed a supplemental declaration on January 25, 2019. In it, plaintiffs' counsel states that the plaintiffs estimated that they worked an average number of overtime hours per week ranging from two hours per week to 10 hours per week; they also reported that in some weeks some did not work any overtime hours, while in others they may have worked as many as 15 hours of overtime. However, none of the plaintiffs precisely could account for the exact amount of overtime worked, due to the lack of any comprehensive detailed time records covering the entire period in question. Counsel also calculated that, based on their normal hourly rate of $25 per hour, the overtime wage rate for all of the plaintiffs should have been $37.50 per hour.

The proposed distribution schedule included in the settlement agreement records that the plaintiffs were subjected to work without overtime pay for a number of work weeks ranging from 56 weeks on the low end to 145 weeks on the high end. The range of estimated hours per week of overtime work postulated by the plaintiffs suggests that they worked an overall average of six hours of overtime per week. That implies that they were due overtime wages for gross numbers of hours ranging from 336 hours (for 56 weeks at six hours per week) to 870 hours (145 weeks at six hours per week). Those figures suggest that the best case gross unpaid wage demands that the plaintiffs could have hoped to advance in this litigation range from $12,600 (for 336 hours at $37.50 per hour) to $32,625 (for 870 hours at $37.50 per hour). The distribution schedule indicates that the plaintiffs will receive individual pro rata amounts ranging from $6,591 on the low end, for those credited with a 56-work-week share, to $17,066 on the high end, for a 145-work-week share. Those net distribution shares represent approximately 52% of the plaintiffs' best case overall unpaid wage claims.

As counsel for the plaintiffs pointed out at the hearing, one of the most significant problems for the plaintiffs at trial would have been proving the amount of overtime hours that each plaintiff worked, which would have been a highly uncertain prospect given the lack of comprehensive detailed or formally recorded time sheets. The plaintiffs therefore faced the risk that a jury would have awarded them much less than their best-case recovery due to the paucity of the available documentation to sustain their claims. The plaintiffs also faced other risks at trial, most prominently that the major question of fact for the jury would be determining whether the plaintiffs were subject to the overtime wage regulation at all. As the Court previously concluded in its opinion on the parties' cross-motions for summary judgment, a jury reasonably could have concluded, based on the evidence submitted in the record, that they were not. In addition, the parties vigorously contested the question of whether the overtime wage regulation violations by the defendant were willfully committed, and the Court concluded that a jury reasonably could have gone either way on that issue. If the jury concluded that the violations were not willful, then a shorter limitations period of two years rather than three years would have applied, which the plaintiffs concede would have eliminated from consideration one-third of the work weeks that they relied upon in calculating the extent of their damages.

Although the proposed recovery represents a discount against the plaintiffs' best hopes, the settlement represents a fair and reasonable resolution of a *bona fide* dispute between the parties on the exact amount of overtime wages due, considering the significant risks and problems of proof that the plaintiffs would have faced at trial. The terms of the settlement adequately establish that the parties are not employing the settlement to negotiate around the requirements of the FLSA. *White v. Premier Pallet & Recycling, Inc.*, No. 18-1460, 2018 WL 4913678, at *1 (N.D. Ohio Oct. 10, 2018) ("The existence of a bona fide dispute serves as a guarantee that the parties have not

manipulated the settlement process to permit the employer to avoid its obligations under the FLSA."). The Court is sufficiently assured that the plaintiffs have been made whole on their demands for unpaid wages, when taking into account the significant degree of uncertainty expressed in their estimates of the amounts that were due to them. The settlement includes an attorney's fee in a reasonable amount. The named plaintiffs were not present at the hearing, but counsel for the plaintiffs stated that he reviewed the proposed settlement with each of them and that all had approved its terms.

The parties jointly ask the Court to approve the agreement; it does not appear that there is any danger of collusion aimed at skirting the requirements of the FLSA. After hearing the parties' presentations and reviewing the supplemental information submitted by the plaintiffs, the Court is satisfied that the settlement is fair, adequate, and reasonable, and the Court therefore will grant the joint motion for approval.

Accordingly, for the reasons stated herein and on the record, it is **ORDERED** that the joint motion of the parties to approve the settlement agreement (ECF No. 83) is **GRANTED**, and the settlement is **APPROVED**.

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE** and without costs to either party, but either party may apply to reopen the case to enforce the settlement agreement **on or before March 14, 2019**.

It is further **ORDERED** that the parties' pending motions (ECF No. 65, 69, 72) are **DISMISSED** as moot.

                                                s/David M. Lawson
                                                DAVID M. LAWSON
                                                United States District Judge

Date: February 19, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on February 19, 2019.

                      s/Susan K. Pinkowski
                      SUSAN K. PINKOWSKI